IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JACK GENE DICKSON,

        Plaintiff,

    v.

RICK ANGELOZZI, C. PETERS,
SGT. JACKSON, LT. NOACK, C/O
ELGIN, C/O JOHNSON, R. O'BRIEN,
C/O SHIMSHOCK, MD GREEDES,
RN WOODRUFK, MD BRISTOL,

        Defendants.

No. 3:16-cv-01089-HZ

OPINION & ORDER

Jack Gene Dickson
1993 NE 9th Pl.
Hillsboro, OR 97124

    Pro Se Plaintiff


Ellen F. Rosenblum
Attorney General
Robert E. Sullivan
Senior Assistant Attorney General
DEPARTMENT OF JUSTICE
1162 Court Street NE
Salem, OR 97301

    Attorneys for Defendants


1- OPINION & ORDER

HERNÁNDEZ, District Judge:

Pro Se Plaintiff Jack Gene Dickson brings this action under 42 U.S.C. § 1983, alleging violations of his Eighth Amendment right to be free from cruel and unusual punishment. Defendants include: Rick Angelozzi, Superintendent of the Columbia River Correctional Institution; C. Peters, Director of the Oregon Department of Corrections; Sgt. Jackson; Lt. Moack; Correctional Officer Elgin, Correctional Officer Johnson, and Correctional Officer Schimschock, employees of CRCI; and M.D. Greeder, M.D. Bristol, R.N. Woodruff, and R.N. R. O'Brien, medical staff at CRCI.[1] Defendants move for summary judgment on Plaintiff's claim. For the reasons that follow, the Court grants Defendants' Motion for Summary Judgment.

## BACKGROUND

### I. Factual Background

Plaintiff Jack Dickson entered the custody of the Oregon Department of Corrections ("ODOC") on May 5, 2015. Prior to his incarceration, Plaintiff sustained multiple fractures to both feet and legs. DiGiulio Decl. ¶ 7, ECF 47. As a result of this injury, Plaintiff underwent surgery to place metal plates in his feet. *Id*. Plaintiff also suffers from chronic arthritic pain in his legs, shoulders, and back due to his age and prior injuries. *Id.* at ¶ 50.

In his Complaint, Plaintiff alleges that on August 14, 2015, he was moved from a lower bunk to a top bunk in violation of medical restrictions he had at Coffee Creek Correctional Facility ("CCCF") and Columbia River Correctional Institution ("CRCI"). Compl. ¶ E, ECF 2. He asserts that he fell off the top bunk twice four days later, resulting in injury to his shoulder, back, and feet. Compl. ¶ F. Plaintiff alleges that he reported his injury to Defendants Elgin, Schimschok, and Johnson on August 18, August 20, August 21, and September 3, 2015. Compl.

---

[1] The caption for this case incorrectly spells Glenn Greeder's name as "Greedes," Craig Schimschock's name as "Shimshock," and Kirt Woodruff as "Woodrufk."

¶ G. Plaintiff asserts that x-rays during this time revealed "a 4 mm fragment of bone from his (L) AC joint area, [and] bone to bone sever [sic] damage to his L5 & S1 lumbar spine." Compl. ¶ H. According to Plaintiff, he complained of pain at several appointments and was denied requests for an extra mattress to support his back by Defendants Noack and R. O'Brien. Compl. ¶¶ I-J. He also asserts that medical staff could have addressed his pain by offering him medications to make him more comfortable. Compl. § V.

Medical records submitted by Defendants do not entirely support Plaintiff's allegations. After a month at CCCF, Plaintiff was transferred to CRCI. DiGiulio Decl. ¶¶ 15–17. The intake paperwork and early medical records from both facilities note Plaintiff's difficulties with his knees, feet, and shoulder. DiGiulio Decl. Attach. 2 at 9, 14. But they do not indicate that Plaintiff had any low bunk restriction. *Id.* Nor did Plaintiff appear to request one. Instead, a few days after he was transferred to CRCI he reported pain in his feet and legs and requested medical shoes. *Id.* at 14. Plaintiff was also seen numerous times by CRCI Health Services between June and August of 2015 for unrelated medical issues.

After Plaintiff's alleged fall on August 18, he had multiple medical appointments but did not mention falling from his bunk until November. On August 20 and 21, Plaintiff reported increased pain in both feet and his knee, which he attributed again his shoes. *Id.* at 17–18. X-rays of both feet and his right knee were taken on August 28, 2015, and showed old injuries and fusion of the left tarsometatarsal joints. *Id.* at 104. On September 2, 2015, Plaintiff requested a low bunk restriction, and he was issued a low bunk order for one year by a medical provider two days later. *Id.* at 41. On September 9, 2015, Plaintiff reported chronic pain in his knee, feet, and shoulder but denied any new injury. *Id.* at 19. Five days later, he reported shoulder pain "since falling onto it ~2 wks ago." *Id.* at 20. On September 18, 2015, Plaintiff had a left-shoulder x-ray,

which also showed old injuries and osteoarthrosis. *Id.* at 105. An x-ray of Plaintiff's cervical and lumbar spine in October similarly showed degenerative changes. *Id.* at 106. On October 15, 2015, he requested continuation of the low bunk order to prevent falls. *Id.* at 22.

On November 5, 2015, Plaintiff saw his provider at a follow-up appointment for his back pain and reported falling from a top bunk. *Id.* at 23. He reportedly asked why it took so long to get a lower bunk ordered. *Id.* His low bunk restriction was continued due to both his back and leg pain. *Id.* at 23, 43. On December 10, 2015, Plaintiff again reported that his shoulders, knees, and feet were still painful and that he thought it was all related to his fall from the top bunk in August. *Id.* at 24. On May 19, 2016, Health Services again continued his lower bunk restriction after he reported progressive knee, shoulder, and low back pain and stiffness. *Id.* at 27.

On May 27, 2016, Plaintiff reported his August 2015 fall from the top bunk to an orthopedic specialist. *Id.* at 28. An x-ray of his right shoulder demonstrated moderate degenerative changes. *Id.* at 107. Plaintiff was then seen in June, July, and August 2016 for his complaints of chronic shoulder and back pain. *Id.* at 28–30.

Plaintiff was prescribed various medications by Health Services providers to help manage his pain. In September, he was prescribed Naproxen and Capsaicin after reporting knee, shoulder, and foot pain. *Id.* at 19–20. After reporting an increase in his low back pain in October, he was prescribed Nortriptyline—a medication with pain control properties—and given an order for an extra pillow. DiGiulio Decl. ¶ 31; DiGiulio Decl. Attach. 2 at 21. On October 15, 2015, Plaintiff's prescription for Nortriptyline was increased after he reported it was not improving his back pain. DiGiulio Decl. Attach. 2 at 22. When Plaintiff again reported that the Nortriptyline was ineffective, he was prescribed Lodine, a non-steroidal anti-inflammatory medication. DiGiulio Decl. ¶ 32; DiGiulio Decl. Attach. 2 at 23. When Lodine also proved to be

ineffective, providers started a trial of a different NSAID. DiGiulio Decl. ¶ 37; DiGiulio Decl. Attach. 2 at 24. In May, his provider ordered a consult with an orthopedic specialist, who he saw on May 27. DiGiulio Decl. ¶ 41; DiGiulio Decl. Attach. 2 at 27. Between June and August of 2016, Plaintiff's dosage of Neurontin was progressively increased to manage his pain. DiGiulio Decl. Attach. 2 at 29–30. On August 23, 2016, Plaintiff reported fair pain relief for a week following a shoulder injection. *Id.* at 30.

Plaintiff was released on post-prison supervision between October 21, 2016, and April 3, 2017. When he returned to the custody of ODOC and was housed at Deer Ridge Correctional Institution, he once again reported back and foot pain. *Id.* at 31 After evaluating Plaintiff, Plaintiff's provider determined that he did not meet the criteria for a low bunk restriction. *Id.* at 112. On May 3, 2017, Plaintiff reported that he fell from his bunk when climbing down the ladder and requested an assignment to a lower bunk. *Id.* at 32–33. He was signed up for a clinical review of lower bunk status and instructed to purchase cream for sore muscles from the commissary. *Id.* at 33. In June, Plaintiff was again provided an order for a lower bunk. *Id.* at 52. In August and September, 2017, Plaintiff received additional x-rays of his right shoulder, lumbar spine, and thoracic spine due to his prior fall and complaints of pain. *Id.* at 34–35, 108–10. Plaintiff's prescription of Neurontin was continued when he went back into ODOC custody in 2017. *Id.* at 31. His provider also ordered a physical therapy consultation, and he received an injection in his right shoulder to treat his pain. *Id.* at 34, 36, 54.

Dr. Christopher DiGiulio is a physician employed by ODOC as a Deputy Medical Director. DiGiulio Decl. ¶ 1. As Dr. DiGiulio describes it, Plaintiff suffers from chronic arthritic pain due to his age and injuries he suffered prior to his incarceration. *Id.* at ¶¶ 7, 12, 50. X-rays confirm that Plaintiff previously suffered multiple injuries but "rule[] out acute injury since his

incarceration in ODOC." *Id.* at ¶ 7. He asserts that Plaintiff saw providers regularly and "receive[d] appropriate medication to manage his chronic pain and instructions on physical exercises to improve his comfort." *Id.* at ¶ 50.

## II.     Procedural Background

On June 15, 2016, Plaintiff filed this civil rights complaint. Plaintiff contends he was denied proper medical care and has been caused to suffer a great deal of pain. Specifically, Plaintiff alleges that Defendants' failure to keep Plaintiff assigned to a bottom bunk and failure to offer medications to help Plaintiff's pain while he awaited treatment by a surgeon amount to deliberate indifference under the Eighth Amendment. Compl. § V. Plaintiff seeks $100,000 per defendant in their individual and official capacities, $2,000,000 in punitive damages per defendant in their individual and official capacities, and any other remedy that the Court sees fit. Compl. at 4.

On March 1, 2018, Defendants filed their motion for summary judgment. Def. Mot. Summ. J. ("Def. Mot."), ECF 46. Eight days later, Plaintiff moved for appointment of counsel. Pl. Mot. Appt. Counsel, ECF 49. The Court stayed the deadline for Plaintiff's response to Defendants' motion and made six unsuccessful attempts to appoint pro bono counsel for Plaintiff in this matter. During this time, Plaintiff was also released from ODOC custody. On July 20, 2018, the Court provided Plaintiff with information on how to contact the Oregon State Bar's Lawyer Referral Service and instructed Plaintiff to file a status report by the end of August informing the Court as to his attempts to obtain counsel. However, attempts to contact Plaintiff with this information proved unsuccessful, and mail for Plaintiff was returned to the Court as undeliverable on multiple occasions. Accordingly, on October 26, 2018, the Court gave Plaintiff

thirty days to respond to Defendants' Motion for Summary Judgment. Plaintiff did not file a response, and the Court took the Motion under advisement on November 26, 2018.

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927-28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Summary judgment is improper

where divergent ultimate inferences may reasonably be drawn from the undisputed facts." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (internal quotation marks omitted); *see also Int'l Union of Bricklayers & Allied Craftsman Local Union No. 20, AFL-CIO v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985) ("Even where the basic facts are stipulated, if the parties dispute what inferences should be drawn from them, summary judgment is improper.").

## DISCUSSION

Defendants contend that they were not deliberately indifferent to Plaintiff's medical needs in violation of the Eighth Amendment because Plaintiff received appropriate care for his pre-incarceration injury. Def. Mot. 4.[2] Defendants also argue that Plaintiff has failed to connect the acts of Correctional Officers Elgin, Schimschok, and Johnson; Lt. Noack; and R.N. R. O'Brien to an Eighth Amendment violation. *Id.* at 7. Accordingly, Defendants ask that this Complaint be dismissed with prejudice and judgment entered in their favor. *Id.*

Under the Eighth Amendment, the government has an "obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103–05 (1976). Failure to meet that obligation can constitute an Eighth Amendment violation cognizable under 42 U.S.C. § 1983. *Id.* To establish an Eighth Amendment claim, Plaintiff must show: (1) that he had a "serious medical need;" and (2) that Defendants were deliberately indifferent to that need. *Id.* at 104. "[A] serious medical need is present whenever the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain . . . . " *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (internal citations omitted). Deliberate indifference may be satisfied by showing: "(a) a purposeful act or failure to respond

---
[2] Defendants also argue that they are entitled to qualified immunity. However, because the Court finds for Defendants on the merits of Plaintiff's claims, the Court declines to separately reach this issue.

8- OPINION & ORDER

to a prisoner's pain or possible medical need[;] and (b) harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *McGuckin v. Smith*, 974 F.2d 1133, 1059 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997)). "Indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.'" *Id.* (quoting *McGuckin*, 974 F.2d at 1059). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a high legal standard. A show of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004) (citations omitted).

Defendants do not dispute that Plaintiff's underlying pain from a chronic injury constitutes a serious medical need. Def. Mot. 4. Instead, Defendants argue that Plaintiff cannot show that they were deliberately indifferent to Plaintiff's serious medical need because there is no evidence that "any defendant failed to provide [Plaintiff] with timely and appropriate care[.]" *Id.* at 15. The Court agrees with Defendants. Even viewing the evidence in the light most favorable to Plaintiff, no reasonable jury could find that Defendants were deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment.

First, Plaintiff alleges that he suffered a "great deal of pain" because "CRCI staff fail[ed] to follow inmate medical restrictions to keep plaintiff assigned to a lower bunk[.]" Compl. § V. But the record does not support this allegation. Plaintiff did not request a lower bunk restriction until September 2, 2015. Plaintiff's request was addressed promptly, as his provider ordered a year-long lower bunk restriction for Plaintiff only two days later. In addition, there is no other

evidence in the record to suggest Plaintiff had a lower bunk restriction before that time or that he made prison officials aware that he needed a lower bunk. Prison staff therefore could not have been aware that they were creating a substantial or serious risk of harm to Plaintiff when he was assigned a top bunk at CRCI. *Compare Hatfield v. Or. Dept. of Corrections*, No. 03:12-cv-00883-HZ, 2014 WL 1323122, at *7 (D. Or. Mar. 31, 2014) (finding an issue of fact as to whether the defendant created a substantial risk of harm to the plaintiff by ordering him to a top bunk even though the defendant knew that the plaintiff weighed 330 pounds, had bad knees, and required the use of a CPAP machine) *with Howard v. Lipkowitz*, No. C 02-1821 MMC (PR), 2002 WL 1483823, at (N.D. Cal. July 1, 2002) (The district court dismissed the plaintiff's Eighth Amendment claim under § 1915A(a) because he did not allege that the defendant knew the plaintiff faced a serious risk of harm from being in an upper bunk. The plaintiff's allegation that he told the defendant he needed a lower bunk was insufficient to create such an inference as neither the plaintiff nor the defendant was a medical professional and there had been no prior injury resulting from his upper bunk assignment.). Accordingly, there is no evidence that CRCI staff either acted, or failed to act, in a manner deliberately different to Plaintiff's serious medical need with regard to Plaintiff's lower bunk restriction.

Second, Plaintiff alleges that Defendants could have offered him medications to help Plaintiff until a surgeon could treat his injuries. Compl. § V. The record shows, however, that Defendants did offer Plaintiff medications for pain management and were responsive to his complaints of ineffective medication and increased pain. In September, Plaintiff was prescribed Naproxen and Capsaicin. After reporting an increase in back pain, his provider prescribed Nortriptyline. When that proved ineffective, his provider tried two other pain medications. Eventually, he was prescribed Neurontin at increasing dosages to address his pain, and he was

given a shoulder injection. In addition to these medications, Plaintiff was given multiple x-rays, a referral to an orthopedic specialist, and physical therapy. While Plaintiff may have been dissatisfied with Defendants' treatment of his pain, he cannot show that Defendants took any purposeful act that harmed him or failed to respond to his medical needs such that it caused him harm. *See Weaver v. Bennette Norton/TRCI's TLC Committee*, No. 2:6-cv-02311-HZ, 2018 WL 4214139, at *6–7 (D. Or. Sept. 4, 2018) (granting summary judgment to the defendants where the record showed that they were responsive through medication and treatment to the plaintiff's complaints of pain).

Finally, Plaintiff makes specific factual allegations regarding some of the individually-named Defendants that do not amount to deliberate indifference in violation of the Eighth Amendment. Plaintiff alleges that he reported his fall from the top bunk to Correctional Officers Elgin, Schimschok, and Johnson on August 18, August 20, August 21, and September 3, 2015. Yet Plaintiff had medical appointments on August 20, August 21, August 28, and September 2, and failed to report this fall to his provider until November. In addition, there is no allegation or evidence to suggest that these Correctional Officers did not respond to Plaintiff's possible medical needs by failing or refusing to allow him access to medical care after this alleged fall. Plaintiff also alleges that he requested an extra mattress for his injured back and was denied this request by Lt. Noack and R.N. O'Brien. Compl. ¶ J. There is evidence that Plaintiff's request was submitted to the Therapeutic Level of Care Committee and was not approved. DiGiulio Decl. Attach. 2 at 25, 44. But there is no evidence or allegation that this denial placed Plaintiff at a substantial risk of serious harm, or that Defendants were aware that their actions could subject Plaintiff to such harm. Accordingly, the Court grants summary judgment to Defendants on Plaintiff's § 1983 claim.

## CONCLUSION

Defendants' Motion for Summary Judgment [46] is GRANTED. Judgment shall be entered in favor of Defendants.

IT IS SO ORDERED.

Dated this 4 day of ~~February~~ March, 2019.

_____
MARCO A. HERNÁNDEZ
United States District Judge